UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MUHAMMAD ALTANTAWI,

           Plaintiff,                    Case No. 2:22-cv-11906

v.                            District Judge Mark A. Goldsmith
                                 Magistrate Judge Anthony P. Patti

MICHAEL J. BOUCHARD, *et al*.,

           Defendants.

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY WITHOUT PREJUDICE IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 45)

**I.**    **RECOMMENDATION**:  the Court should **GRANT IN PART AND DENY IN PART** Defendants' motion for summary judgment (ECF No. 45). Specifically, the motion should be denied without prejudice as to Defendant Wellpath due to the bankruptcy stay, and granted as to all other Defendants.

**II.**    **REPORT:**

    **A.**    **Background**

        Muhammad Altantawi (#724497) is currently incarcerated in the Michigan Department of Corrections (MDOC) Thumb Correctional Facility (TCF).[1]  This matter arises from Plaintiff Muhammed Altantawi's requests for medical and

---

[1] *See* www.michigan.gov/corrections, "Offender Search," last visited February 6, 2025.

dietary accommodations during the time he was held as a pretrial detainee in Oakland County Jail. (ECF No. 38, PageID.265-66.)  Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs by failing to provide him with a diet consisting of foods free from soy and gluten. (ECF No. 38, PageID.267.)  Plaintiff brought suit on August 16, 2022, but his September 25, 2023 Amended Complaint is the operative pleading. (ECF No. 38.)

Judge Goldsmith referred this case to me "for all pretrial proceedings, including a hearing and determination of all non−dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 36.)  On September 25, 2023 – following this Court's rulings on two motions to dismiss (ECF Nos. 23, 25, 31, 35) – Plaintiff filed an amended complaint.  (ECF No. 38.)

His amended complaint asserts claims against: Wellpath, as the entity contracted by Oakland County to oversee and provide all medical and healthcare services; Vicki Warren, the "Health Services Administrator" of the jail; Shane Gibson, an employee of Wellpath; Jo Ann Mitchell, the "Medical Director" of the jail; and "Unknown Health Care Staff."  (ECF No. 38, PageID.261-262.) Plaintiff's lengthy and hand-written complaint is often difficult to discern, but he appears to be asserting claims under 28 U.S.C. § 1983 for violation of his First, Sixth, Eighth, and Fourteenth Amendment rights.  He asserts that Defendants

2

violated and injured his physical and mental health by failing to provide medical care for his weight loss and dietary complications, chronic back complications, and the cold temperatures persistent throughout Plaintiff's incarceration.  (ECF NO. 38, PageID.263-64.)  Plaintiff alleges a policy and custom of rejecting or refusing to provide medical care "as often as possible."  (ECF No. 38, PageID.264.)  Plaintiff further contends that Defendants threatened him with "frivolous 'suicide watch' placement" and threatened to deny or reject all future medical requests.  (ECF No. 38, PageID.264.)  Finally, he alleges Defendants violated his rights under the U.S. Constitution and also the Health Insurance and Portability Act by failing to provide him with copy of his medical grievances, kites, and correspondence.  (*Id.*)

Altantawi is proceeding *in forma pauperis*, and the Court and the U.S. Marshals Service (USMS) have facilitated service of process.  (ECF Nos. 2, 7, 8, 12, 15, 16, 17, 18, 21.)  Currently before the Court is the Wellpath Defendants' May 23, 2024 motion for summary judgment (ECF No. 45), as to which they have filed an "executed" exhibit consisting of Defendant Warren's affidavit (ECF No. 47), Plaintiff has filed a response (ECF No. 50), and the Wellpath Defendants have filed a reply (ECF No. 52).

### B. Statement of Material Facts[2]

1.  Plaintiff was booked into the Oakland County Jail on July 24, 2020. (ECF No. 45, PageID.359; ECF No. 50, PageID.508.)

2.  A client initial assessment noted he was in good health with no medical complaints. (ECF No. 45, PageID.359; ECF No. 50, PageID.508.)  Plaintiff admits that the assessment noted this, but takes issue with the accuracy of the assessment.

3.  On July 24, 2020, a medical prescreening was performed. Plaintiff was not on a prescribed diet, did not have any medical problems, was not on any prescribed medication, and it was noted that he has an allergy to pork.  (ECF No. 45, PageID.359; ECF No. 50, PageID.508.)  Plaintiff admits that the assessment noted this, but takes issue with the accuracy of the assessment.

4.  On July 30, 2020, Plaintiff presented for a medical history and physical assessment with Jan Matthews, R.N.  At the time of the exam, Plaintiff was a 19-year-old male, weighing 171 pounds. It was noted Plaintiff was in a car accident with left shoulder pain.  He denied Motrin and Tylenol.  His past medical history

---

[2] Defendants set forth a standard Statement of Material Facts, with appropriate citation to the record.  In response, Plaintiff's Counter Statement often quibbles or takes issue with portions of the facts that are irrelevant or involve elaborate word-twisting.  The Undersigned has disregarded any superficial disputes that are not material or, more often, not in fact disputed, noting any potentially significant areas of disagreement for later development.  Although largely presented here verbatim, it has been grammatically adjusted for ease of reading, with additional citations to the record added, as needed.

was unremarkable, with the only abnormal findings being dry skin and edema.  A

TB test was performed on this date.  **(**ECF No. 45, PageID.359; ECF No. 50,

PageID.508.)  Plaintiff admits that the assessment made these findings, but takes

issue with the accuracy of the assessment.  Specifically, Plaintiff claims that he

told Matthews that he "could not eat soy or gluten."  (ECF No. 50, PageID.509.)

5.  On January 16, 2021, Plaintiff's diet type was listed as "religious" with a

diet description of "halal." .  (ECF No. 45, PageID.359; ECF No. 50, PageID.509.)

6.  On August 3, 2021, NP Deutchman performed a health assessment.

Plaintiff weighed 159 pounds with a BMI of 22.2.  Defendants assert, with citation

to the medical record (ECF No. 45-1, PageID.400), that a physical examination of

his musculoskeletal system demonstrated normal extremities and spine.  NP

Deutchman noted Plaintiff's vital signs were within normal limits, his lungs were

clear to auscultation, his breathing was symmetrical with normal effort.  There was

no edema in his extremities and his capillary refill was less than three seconds.

(ECF No. 45, PageID.359-60; ECF No. 50, PageID.509.)  Plaintiff asserts that he

received only a "perfunctory yearly health review." (ECF No. 50, PageID.509.)

7.  On November 15, 2021, Plaintiff submitted a kite requesting steroidal

anti-hemorrhoid ointment and corollary diet adjustment.  He requested McKesson

body lotion as the commissary lotion led to repeated breakouts on his arms and

subsequent scrubbing. (ECF No. 45-1, PageID.403.)  Plaintiff was triaged and on

November 17, 2021, and was evaluated by Deanna Montgomery, R.N., who ordered Fiber Tab, 625 mg, one tablet by mouth twice a day for five days and instructed him to increase his exercise, fluids, and fiber and to drink at least eight glasses of water or other fluids to have enough for fiber to work properly. He was provided with Preparation H and Eucerin cream.  (ECF No. 45, PageID.360; ECF No. 50, PageID.510.)

8.  On July 15, 2022, Plaintiff submitted a sick call request, stating he was individually discarding items on his food tray that contained soy.  He requested a high protein, high calorie diet, stating he is a "very skinny, 21-year-old male muscle wasting constantly fatigued recurring brain fog low to no energy throughout the day current diet as served and consumed is inadequate."  (ECF No. 45-1, PageID.406.)  Danielle Veatch, L.P.N. noted he was scheduled to see his provider on July 25. (ECF No. 45, PageID.360-61; ECF No. 50, PageID.510.)

9. On July 24, 2022, Plaintiff submitted a request for a back brace or multiple mattresses as he was in a car accident leading to multiple fractures in his neck, vertebrae, sternum, and hand.  He complained of nerve issues and other pains exacerbated by his sleeping environment.  He submitted a second request complaining of gluten intolerance, which was causing fatigue, flatulence, diarrhea, pain and constipation, and bloody stools.  LPN Scruggs responded on July 25 that

he was seen in the clinic on July 25. (ECF No. 45, PageID.361; ECF No. 50, PageID.510.)

10.  On July 25, 2022, Dr. Mitchell saw Plaintiff for a provider visit.  His vitals were: blood pressure 148/96, pulse 104, respiratory rate 16, temperature 97.7, pulse ox 98, weight 153, and BMI 22.  Dr. Mitchell noted he was being seen for his annual exam and he was very focused on getting a gluten-free and soy diet.  Plaintiff informed Dr. Mitchell he had "allergies."  Dr. Mitchell asked him to sign a release of information from the physician who diagnosed him.  Plaintiff explained he had not seen a doctor "in years."  Dr. Mitchell stated she would take a release of information from anyone who could verify he had a soy and gluten allergy.  (ECF No. 45, PageID.361; ECF No. 50, PageID.510.)  Plaintiff asserts that he told Dr. Mitchell that there was no point in signing a "release" because no such records existed and that he wanted to be tested and assessed for a soy and gluten allergy.  (ECF No. 50, PageID.511.)

11.  Plaintiff informed Dr. Mitchell his father was a doctor, and he would bring the paperwork stating he had not been to the doctor since he was a kid.  Dr. Mitchell again stated that if he signs a release of information to his dad as his doctor, she will send the release of information. The parties agree that the encounter became argumentative, but disagree as to who escalated.  According to Defendants, Dr. Mitchell noted that Altantawi asked her what would happen if he

7

stopped eating until he weighed 136 pounds so he could get more food.  Dr.
Mitchell explained that refusing to eat would be considered a harm to himself and
possibly suicidal ideation.  Plaintiff denies that he threatened to stop eating and
contends Dr. Mitchell threatened to put him on suicide watch.  Defendants assert
that Dr. Mitchell was able to perform a brief examination before having the
deputies remove him.  The examination demonstrated that: his lungs were clear to
auscultation bilaterally; his heart had a regular rate and rhythm; his abdomen was
nonrigid, nonguarding, nontender and bowel sounds were heard all four quadrants;
his extremities were without pretibial edema; and his neuromuscular exam showed
he was alert and oriented, cranial nerves 2-12 were intact, and no gross neurologic
deficits were appreciated.  (ECF NO. 45, PageID.361-62; ECF No. 50,
PageID.512.)

12.  Dr. Mitchell documented that during the encounter, Plaintiff did not
voice any complaints of nausea, vomiting, constipation, diarrhea, fever, chills,
cough, chest pain, or back pain.  Plaintiff informed Dr. Mitchell he would be filing
a grievance because he is not receiving proper food.  Dr. Mitchell also entered a
health assessment. Plaintiff weighed 153 pounds, with a BMI of 22.  A physical
examination of his musculoskeletal system demonstrated normal extremities and
spine.  Plaintiff contends that Dr. Mitchell did not conduct a thorough examination,
that he was prevented from explaining his medical concerns in depth, and that he

was kicked out before he could seek further medical examination. (ECF NO. 45, PageID.362; ECF No. 50, PageID.513.)

13.  Following this appointment, Plaintiff filed a grievance against Dr. Mitchell and Vicki Warren.  Shane Gibson responded to the grievance, stating that based on his weight of 153 pounds, he did not qualify for double food trays.  He explained to Plaintiff that a special diet could not be provided without verifiable proof that it is warranted.  (ECF NO. 45, PageID.363; ECF No. 50, PageID.513.)

14.  On July 25, 2022, Plaintiff submitted a sick call, complaining his problems were not addressed during his visit.  He stated the visit was for his yearly checkup and for a medical request for double trays, gluten free diet, and accommodations for his back problems, back brace, and extra mattress. LPN Scrugg noted he was seen by medical on July 25.  (ECF NO. 45, PageID.363; ECF No. 50, PageID.513-14.)

15.  On July 26, 2022, Plaintiff submitted a sick call requesting his medical records from his visit with Dr. Mitchell.  Lena Scheuer, R.N. informed him he could request his medical records upon release from the Oakland County Jail. He submitted a second sick call requesting that medical recognize his gluten allergies. The request was forwarded to the HSA.  (ECF No. 45, PageID.363.)  Plaintiff denies that his request sought recognition of a gluten allergy, but a review of the

sick call request specifically states that he was "requesting a recognition of my gluten allergies." (ECF No. 45-1, PageID.419.)

16.   On July 27, 2022, Plaintiff submitted a sick call addressed to Shane Gibson and Vicki Warren regarding his visit with Dr. Mitchell.  His request was forwarded to administration.  Plaintiff submitted a second sick call regarding obtaining copies of his medical records. (ECF No. 45, PageID.363; ECF No. 50, PageID.514.)

17.   On July 28, 2022, Plaintiff received a patient communication form stating his medical records would not be provided to him with he was in the custody of the Oakland County Sheriff's Office.  He was advised that any Michigan Department of Corrections facility or health care provider can request a copy of his medical records.  (ECF No. 45, PageID.364; ECF No. 50, PageID.514-15.)

18.   On August 1, 2022, Plaintiff submitted a sick call asking for more blankets.  Plaintiff stated the past week has had extremely cold and frigid temperatures in the jail.  RN Montgomery informed him he did not qualify for an extra blanket. (ECF No. 45, PageID.364; ECF No. 50, PageID.515.)

19.   On August 4, 2022, Plaintiff filed a grievance against Wellpath and the medical department regarding his alleged denial of medical care.  Shane Gibson responded again, explaining that a release of information must be sent to his

prescribing physician. Mr. Gibson further explained that if he would like to provide that information, medical would be happy to send that out without delay to make sure he gets the proper diet. (ECF No. 45, PageID.364; ECF No. 50, PageID.515.)

20.   On August 11, 2022 Plaintiff filed a grievance against Wellpath and the "their polices" regarding the failure to receive his medical records from the jail. Deputy Pasini informed Plaintiff the grievance contained multiple issues and directed him to resubmit it.  This was resubmitted on August 15, 2022.  Deputy Richardson explained to Plaintiff that his grievance included medical and deputies and that medical handles their grievances separately.  Plaintiff's grievance was deemed invalid. (ECF No. 45, PageID.364-65; ECF No. 50, PageID.515.)

21.   On August 15, 2022, Plaintiff submitted a sick call asking for the names of the health care staff, noting that refusal to do so would be "in retaliation in the continuation of the Clinic and its employees['] retaliatory indifferent dismissals and denials of all of my requests likely coordinated and instigated by Dr. Mitchell[.]" (ECF No. 45-1, PageID.424.)   RN Woodiwiss sent the request to Shane Gibson.  Plaintiff submitted a second sick call complaining he has been retaliated against with all of his other health care requests.  He stated he was "terrified and in mental and psychological torment and agony since Dr. Mitchell threatened me with several retaliatory measures[,] one of which resolved my

11

ongoing weight loss and the other have been clearly implemented and followed through with by the Clinic and its employees as a whole….” (*Id.*, PageID.425.) RN Woodiwiss noted she discussed this with Gibson and noted that Plaintiff was weighed on August 5 and further noted that medical allows one weight check per month.  (ECF No. 45, PageID.365; ECF No. 50, PageID.515-16.)

22. On August 17, 2022, Plaintiff submitted a duplicate sick call relating to his soy and gluten complaints. (ECF No. 45, PageID.365; ECF No. 50, PageID.516.)

23.  On August 18, 2022, Plaintiff submitted a sick call requesting his weight to be checked. Plaintiff stated, “You have all lied and likely fabricated and forged medical records saying was weighed on [8/05/22]…” (ECF No. 45-1, PageID.427.)  He further stated he had not  been weighed since July 25 and that medical should take notice that he “was 153 pounds and is now likely 130-145 pounds on account of your deliberate callous and culpable difference” and that he is “suffering these ongoing and continuing violations and injuries….” (*Id.*)  On August 22, 2022, RN Woodiwiss observed that his symptoms were resolved.  (ECF No. 45, PageID.365-66; ECF No. 50, PageID.516-17.)

24.  On August 25, 2022, Plaintiff submitted a sick call request addressed to Vicki Warren and Shane Gibson. Plaintiff stated he was finally weighed on August 22 and weighed 144 pounds, which he states is proof of the physical weight

detriment and injury he suffers and continues to suffer as a result of his unrecognized serious medical dietary needs.  He states he has lost more than 10 pounds since his "fateful" visit on July 25, 2022.  He further states that the nurse who weighed him told him if he lost more weight and weighed less than 143 pounds, he would be eligible for doubles per policy.  The nurse informed him she had "no authority or ability to instate" him on a gluten and soy free diet and that they were the only ones who could properly remedy his issues. (ECF No. 45-1, PageID.428.)  RN Woodiwiss sent a copy to Shane Gibson. (ECF No. 45, PageID.365-66; ECF No. 60, PageID.517.)

25. On August 27, 2022, Plaintiff submitted a grievance against the jail clinic, Wellpath, and medical, alleging he did not go to the clinic to be weighed on August 5.  Shane Gibson responded and informed Plaintiff he was weighed on July 25 and August 22. (ECF No. 45, PageID.366; ECF No. 50, PageID.517.)

26.  On August 30, 2022, Plaintiff submitted a sick call stating he was supposed to go to the clinic on August 29 for weight checks since "one of the many detrimental and injurious effects of my still unrecognized gluten and soy free diet" is that he is still losing a damaging amount of weight. (ECF No. 45-1, PageID.429.)  On September 4, 2022, RN Montgomery ordered double trays and weight check for 30 days.  (ECF No. 45, PageID.367; ECF No. 50, PageID.517.)

27.  On August 31, 2022, Plaintiff submitted a sick call complaining that

13

because he continues to lose more weight, should be placed on double trays and requested a gluten and soy free diet.  RN Montgomery informed him medical needed documentation of his allergy to change his diet. (ECF No. 45, PageID.367; ECF No. 50, PageID.517.)

28.  On September 2, 2022, Plaintiff submitted a sick call request complaining that due to his allergy of soy and gluten he had not been placed on a double tray ensure diet.  RN Montgomery ordered double trays and weight checks scheduled for 30 days. (ECF No. 45, PageID.367; ECF No. 50, PageID.518.)

29.  Plaintiff was sentenced to 35-60 years for first degree murder on September 21, 2022 and, on September 27, 2022, Plaintiff was transferred to the custody of the MDOC.  (ECF No. 45, PageID.367; ECF No. 50, PageID.518.)

30.  On October 7, 2022, Plaintiff was seen by Martha Siegmund, RDN to discuss soy and gluten allergies. Ms. Siegmund documented that she could not find evidence that he has ever been allergy tested for soy and there was no objective evidence to support subjective complaints of soy allergy.  No changes were recommended, and he was to continue on the regular line and avoid items he does not want.  Plaintiff weighed 165 pounds on October 21, 2022.  (ECF No. 45, PageID.367-38; ECF No. 50, PageID.518.)  Defendants state that as of January 11, 2023, Plaintiff did not have a soy or gluten allergy.  (ECF No. 45, PageID.368.) Plaintiff contends that anything that was documented with the MDOC is not

relevant to this complaint, and that he has "never been tested for soy or gluten allergies[.]"  (ECF No. 50, PageID.519.)  Yet, Defendants have submitted medical records from the MDOC indicating that Plaintiff does not have a confirmed soy or gluten allergy and that a celiac panel taken on November 3, 2022, indicates "no allergy or celiac disease."  (ECF No. 45-3, PageID.453.)

### C. Standard

#### 1. Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once

the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a

16

showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

      The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff because he "failed to present any evidence to defeat the government's motion").

### 2. Deliberate Indifference

      Plaintiff brings his cause of action under 42 U.S.C. § 1983, alleging multiple constitutional violations. He particularly relies on the Eighth Amendment's Cruel

17

and Unusual Punishments Clause, which places restraints on prison officials, directing that they "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)). Prison officials "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Id.* The Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (*quoting Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). The alleged deprivation must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

Because Plaintiff was a pretrial detainee at the time of all relevant events, there is no dispute that this claim should be analyzed under the Fourteenth Amendment's deliberate indifference standard. "Persons in the criminal justice system invoke different constitutional amendments in their 42 U.S.C. § 1983 suits depending on their status." *Hale v. Boyle Cnty.*, 18 F.4th 845, 852 (6th Cir. 2021). Convicted persons bring § 1983 claims under the Eighth Amendment's protection

18

from cruel and unusual punishment. *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 318 (1986). Pretrial detainees must bring claims under the Fourteenth Amendment's Due Process Clause. *Id.* (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 391 (2015)).

Until recently, courts analyzed both pretrial detainees' and prisoners' claims of deliberate indifference "under the same rubric." *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021) (citation omitted). A prisoner's deliberate indifference claim arises from the Eighth Amendment and has objective and subjective components. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The "objective component" addresses the conditions leading to the alleged violation and "requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Constitution." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 567 (6th Cir. 2020) (citations omitted). The "subjective" component addresses the defendants' state of mind and requires a plaintiff to show that a defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

In *Brawner*, the Sixth Circuit analyzed the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), and found that *Kingsley* required

19

modification of the subjective component of a pretrial detainee's deliberate

indifference claim: "Given *Kingsley's* clear delineation between claims brought by

convicted prisoners under the Eighth Amendment and claims brought by pretrial

detainees under the Fourteenth Amendment, applying the same analysis to these

constitutionally distinct groups is no longer tenable." *Brawner,* 14 F.4th at 596.

The Sixth Circuit thus modified the subjective prong as follows: "A pretrial

detainee must prove more than negligence but less than subjective intent—

something akin to reckless disregard." *Id*.

  After *Brawner*, the Sixth Circuit again clarified the elements of a deliberate

indifference claim brought by a pretrial detainee in *Helphenstine v. Lewis Cnty.,*

*Kentucky*, 60 F.4th 305, 315 (6th Cir. 2023). In *Helphensine*, the Sixth Circuit held

that in order to prove a deliberate indifference claim, a plaintiff must show: (1) that

he had a sufficiently serious medical need; and, (2) that each defendant "acted

deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably

high risk of harm that is either known or so obvious that it should be known.'"

*Helphenstine*, 60 F.4th at 317 (citing *Brawner*, 14 F.4th at 596 (internal citations

omitted)). To satisfy the second element of this test, a plaintiff need only prove

"something akin to reckless disregard." *Grote v. Kenton Cnty., Kentucky*, 85 F.4th

397, 405 (6th Cir. 2023) (quoting *Brawner*, 14 F. 4th at 596).

### D. Bankruptcy Stay

Concomitant with this R&R, the Court has today issued an order clarifying the scope of any bankruptcy stay in this case. For the reasons stated in that order, the Court has found that the case is automatically stayed under 11 U.S.C. § 362 as to Wellpath only. Thus, the Court will not evaluate or rule upon the pending motion as it applies to Wellpath, and the claims against Wellpath remain pending but stayed. The motion as to Wellpath therefore should be **DENIED WITHOUT PREJUDICE** to the right to renew the motion after the bankruptcy stay has been lifted.

### E. Discussion

Plaintiff's amended complaint is handwritten in small and often illegible handwriting, and presents his allegations in a sweeping, meandering manner over multiple attachments. (ECF No. 38.) The portion of his amended complaint entitled "Legal Claims," consists of six paragraphs, presumably each paragraph comprising a separate claim. (ECF No. 38, PageID.264-265.) In bringing their motion for summary judgment, Defendants' motion attempts to provide further structure to the allegations by breaking the claims into seven separate claims. (ECF No. 45, PageID.372-373.) In response, Plaintiff takes issue with Defendants' organization and instead asserts that his amended complaint sets forth *seventeen* separate claims. (ECF No. 50, PageID.524-25.) The Court finds Plaintiff's

21

argument, like much of response brief, to be arguing for arguments' sake.  It is a

well-known axiom that the plaintiff is the "master of his complaint," *Roddy v.*

*Grand Trunk W. R.R., Inc.*, 395 F.3d 318, 322 (6th Cir. 2005), and the Court will

look to the operative pleading, not his *post hoc* efforts to massage it, in order to

determine the claims set forth.  Indeed, neither the Court, nor Defendants, have a

duty to act as Plaintiff's attorney and comb through his pleading to find every

potential claim, however nebulous.  *See Pliler v. Ford*, 542 U.S. 225, 231 (2004)

("District judges have no obligation to act as counsel or paralegal to pro se

litigants."); *ECIMOS, LLC v. Nortek Glob. HVAC, LLC*, 736 F. App'x 577, 585

(6th Cir. 2018) ("[I]t is a party's burden to tell us and make the argument because

'[j]udges are not like pigs, hunting for truffles' that might be buried in the record."

(quoting *Emerson v. Novartis Pharms. Corp.*, 446 Fed. Appx. 733, 736 (6th Cir.

2011)).  Plaintiff's operative pleading specifically identifies six claims, and

Defendants break them down per Defendant.  The Court finds this to be a sensible

organization and consistent with what it can discern to have been actually pleaded,

and will proceed accordingly.

### 1.  Defendant Vicki Warren, R.N.

Plaintiff asserts claims against Defendant Warren for violations of the

Fourteenth Amendment related to Defendant Warren's alleged deliberate

indifference to his medical needs in: (1) the alleged refusal to accommodate his

dietary requests; (2) the alleged refusal to provide him care and accommodations related to his back pain; (3) the alleged refusal to acknowledge and assess Plaintiff's medical conditions; and, (4) the alleged refusal to provide any medical care in alleged retaliation for his interaction with Dr. Mitchell. (ECF NO. 38, PageID.263-64.) The fourth allegation also serves as the basis of a First Amendment retaliation clam against Warren.

Defendants argue that Plaintiff has failed to allege and identify facts that show any personal involvement by Defendant Warren in the alleged constitutional violations. Defendants have submitted an affidavit by Warren that states that as the Health Services Administrator at Oakland County Jail, her job is "more administrative than clinical" and that she is "not involved with the day-to-day medical care of inmates." (ECF No. 47, PageID.473.)[3] Instead, she is "responsible for the overall functioning of the jail health program," and she is "responsible for only the oversight, the budget, the contracts, and the accreditation process." (*Id.*) While she avers that she oversees the duties of the medical director and nurses, and she reviews portions of the medical charts for completeness to ensure the notes include the date and time, she also avers that she does not review the content of the medical charts. (*Id.*) She further attests that her only involvement with Plaintiff

---

[3] Defendants initially submitted Warren's unexecuted affidavit as an exhibit to the motion for summary judgment, but then submitted it executed. The Court will cite to the executed docket entry.

was signing Cara Deutchman, N.P.'s, August 3, 2021 Periodic Health Assessment. (*Id.*)  Warren represents that she is not involved with sick call requests or grievances, and that the medical department has no involvement with the menu at the jail.  (ECF No. 46, PageID.474.)  She additionally states that she did not deny Plaintiff medical care or retaliate against him as she was "not involved with his medical care."  (*Id.*)

In response, Plaintiff focuses on his argument that Warren "oversees" the medical staff and argues that "it is her responsibility to make sure her subordinates are doing their jobs."  (ECF No. 50, PageID.527.)  Essentially, Plaintiff seeks to hold Warren liable as a supervisor of the medical staff, but "[t]he law is clear that liability of supervisory personnel must be based on more than merely the right to control employees." *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872 (6th Cir. 1982). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  *Id.* at 874.

The Court should find that Plaintiff has failed to identify a triable issue with respect to Defendant Warren's personal liability under § 1983.  Mere awareness of Plaintiff's general condition is insufficient under 42 U.S.C. § 1983 to impose liability on a supervisor who is not directly involved in his day-to-day health care decisions.  As the Court of Appeals explained in *Crawford v. Tilley*, 15 F.4th 752,

761 (6ᵗʰ Cir. 2021) (internal citations omitted):

> [S]upervisory liability also has sharp limits. It will not attach for "a
> mere failure to act." "[A] supervisor cannot be held liable simply
> because he or she was charged with overseeing a subordinate who
> violated the constitutional right of another." And supervisory liability
> requires more than negligence or recklessness.

.

Defendant Warren provided sufficient evidence demonstrating there was no

genuine issue of fact that she was not directly involved with Plaintiff's care and

operated only as a supervisor.  *See Stansberry*, 651 F.3d at 486.  In response to this

evidence, Plaintiff was required to "make an affirmative showing with proper

evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551,

558 (6ᵗʰ Cir. 2009).  He did not, instead referring generally to the allegations in his

complaint, incorporating them by reference "because they are too voluminous to

copy and rewrite," and arguing that it is "a common sense and reasonable inference

to understand that Warren was issuing the directives to not provide Plaintiff any

medical care."  (ECF No. 50, PageID.528.).  Plaintiff's reliance on "common

sense" in this case, however, is in fact more akin to speculation, which is

insufficient to meet his Rule 56 burden. *See Hartsel v. Keys,* 87 F.3d 795, 802 (6ᵗʰ

Cir. 1996) ("[S]peculation and hunches," cannot create a genuine issue of material

fact sufficient to prevent summary judgment.).  Moreover, to the extent Plaintiff

relies on his assertion that the "nurses told Plaintiff" that they followed Warren's

directions (ECF No. 50, PageID.527), such assertion constitutes inadmissible

hearsay which cannot be relied upon to defeat a summary judgment motion. *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997) (*citing Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (courts cannot consider hearsay when reviewing motion for summary judgment)).

Likewise, because Warren was not involved in Plaintiff's care, any retaliation claim against her fails as well.  The Supreme Court has recognized that prison inmates retain those First Amendment rights not incompatible with their status as prisoners.  *Pell v. Procunier*, 417 U.S. 817, 832 (1974); *see also Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009).  Retaliation based on a prisoner's exercise of constitutional rights violates the Constitution.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  To establish a First Amendment retaliation claim, Plaintiff must show that: (1) the plaintiff engaged in activities protected by the Constitution or statute; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was taken at least in part because of the exercise of the protected conduct. *Id.*  Even assuming that Plaintiff can show protected conduct, he cannot show any adverse action because the undisputed facts show that Warren was not personally involved in the action he complains about (medical care).

Because Plaintiff has failed to meet his burden to point to sufficient evidence to create a jury question on Defendant Warren's personal involvement, the Court

should **GRANT** summary judgment in her favor. *See Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

### 2. Defendant Shane Gibson, R.N.

Both parties seem to agree that the claims against Defendant Gibson mirror those asserted against Warren. (ECF No. 45, PageID.375; ECF No. 50, PageID.529.) The claims are based on Defendant Gibson's alleged deliberate indifference to his medical needs in: (1) the alleged refusal to accommodate his dietary requests; (2) the alleged refusal to provide him care and accommodations related to his back pain; (3) the alleged refusal to acknowledge and assess Plaintiff's medical conditions; and, (4) the alleged refusal to provide any medical care in alleged retaliation for his interaction with Dr. Mitchell. (ECF NO. 38, PageID.263-64.)

As with Warren, Defendants assert that Plaintiff cannot show the requisite Gibson's personal involvement to sustain a §1983 claim. Gibson has submitted an affidavit stating that he was the Director of Nursing at Oakland County Jail during the relevant time period. (ECF No. 45-6, PageID.466.) As Director of Nursing, he

was responsible for:

> a)  overseeing daily operations, which included ensuring patients were taken care of by the nursing staff;
>
> b)  managing budgets and policies, and procedures to align with facility goals and objectives;
>
> c)  organizing service delivery
>
> d) managing resources and collaborating with other departments, facilities, persons served, families, and visitors;
>
> e) leading quality improvement activities, providing direct supervision, and serving as a resource and consultant to nursing staff; and
>
> f)  monitoring safety issues, evaluating service delivery and staff growth, and adhering to the Wellpath' Code of Conduct.

(ECF No. 45-6, PageID.466.)  With respect to these duties at the time of Plaintiff's incarceration, however, he also states that he was not responsible for creating or altering policies and procedures, but that his role was limited to compliance and "ensuring that the staff would follow appropriate procedures."  (ECF No. 45-6, PageID.467.)  As with Warren, Gibson reviews medical charts for completeness to make sure the note includes the date and time, but when he reviews a note, he does not review the content; he is "merely looking to ensure that the appropriate portions of the chart are completed."  (ECF No. 45-6, PageID.466-67.)  Gibson avers that his "only involving with [Plaintiff] was signing Dr. Mitchell's July 28, 2022, Periodic Health Assessment, verifying that it was complete."  (ECF No. 45-

6, PageID.467.)  Gibson is not involved with sick call requests, and responds to grievances when time allows. (ECF No. 45-6, PageID.466-67.)  He states that he did not deny Plaintiff medical care or retaliate against him as he was not involved with his medical care. (ECF No. 45-6, PageID.467.)

Plaintiff argues that Gibson's affidavit shows he is liable for the same reasons that Warren is liable, and adopts the arguments that he set forth with respect to Warren.  (ECF No. 50, PageID.529.)  Specifically, Plaintiff contends that since Gibson oversees the nursing staff, and is responsible for their daily operations, he is liable for their failure to provide him care.  But, as with Warren, this argument misses the mark.

"Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).   Indeed, the Sixth Circuit "has consistently held that damage claims . . . arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."  *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citation omitted).  In other words, a plaintiff must prove the personal involvement of each defendant and must point to facts showing that each defendant participated in, condoned, encouraged, or knowingly

acquiesced in alleged misconduct to establish liability.  *See Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008).

Gibson's supervisory role in monitoring the nursing staff is simply insufficient to give rise to liability.  Moreover, to the extent Plaintiff bases his claims on Gibson's role in reviewing grievances, "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).  (Indeed, Plaintiff appears to disavow such a claim, stating that Defendants' argument is an attempt to misrepresent his claims. (ECF No. 50, PageID.530.))  In sum, Defendants have identified evidence indicating that Gibson was not responsible for the medical treatment of Plaintiff, and as such cannot be held liable for the alleged insufficient care Plaintiff received, whether cast as a Fourteenth Amendment claim or a First Amendment retaliation claim.  As the undisputed evidence shows that Gibson, like Warren, was not the medical provider for Plaintiff, his claims based on that medical care fail as a matter of law.

Plaintiff insists that "[t]he evidence shows that Gibson in fact directed his subordinates to continue denying him care" (ECF No. 50, PageID.531), but he fails to identify any admissible evidence on which a reasonable jury could so conclude. The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56.

Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). The Sixth Circuit has made clear that a party's "status as a pro se litigant does not alter [his] duty on a summary judgment motion." *Viergutz v. Lucent Techs.*, Inc., 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff because he "failed to present any evidence to defeat the government's motion").

The Court should **GRANT** Defendants' motion with respect to Gibson.

### 3. Defendant Jo Anne Mitchell, M.D.

Defendant Mitchell is the only defendant directly involved in Plaintiff's care. Accordingly, Defendants do not argue that she was not personally involved in Plaintiff's care, but that Plaintiff cannot show constitutionally deficient care as a matter of law. The bulk of Plaintiff's complaint relates to his argument that Defendants were deliberately indifferent to his dietary needs in light of his alleged gluten and soy allergies, that despite multiple requests he was refused accommodation for his dietary needs, and that his weight decreased as a result of Defendants failure to provide him with a gluten free and soy free diet. Defendants argue that they attempted to accommodate his request and intimate that Plaintiff's

31

weight loss was due to his own actions in refusing to eat all of his daily food.

The Court need not venture too far into the weeds on any claim related to Plaintiff's dietary needs.  The undisputed record before the Court provides no support for *any* allergy.  Despite Plaintiff's persistent protestations and requests for modified diets, there is no evidence that he provided proof of any allergy to Defendants, and there is no evidence before the Court of any such allergy.  Indeed, Defendants have submitted medical records from the MDOC indicating that Plaintiff does not have a confirmed soy or gluten allergy and that a celiac panel taken on November 3, 2022, indicates no allergy or celiac disease.  (ECF No. 45-3, PageID.453.)  Thus, the only evidence before the Court is that Plaintiff does *not* have an allergy, and Plaintiff has failed to offer any admissible evidence to create an issue of fact with respect to his alleged dietary needs.  Thus, the Court should grant summary judgment on any claim related to his claimed allergies and dietary requests.  *See Booher v. Montavon*, 555 F. App'x 479, 484 (6th Cir. 2014) (summary judgment proper where the medical evidence contradicts the plaintiff's allegations).

With respect to the remaining complaints about his care, Plaintiff alleges that Dr. Mitchell failed to treat him for alleged injuries related to a car accident and denying him "medical care for cold temperature accommodation." (ECF No. 50,

PageID.532.)

Defendant Mitchell has submitted an affidavit attesting that her sole involvement with Plaintiff was limited to one visit, on July 25, 2022.  (ECF No. 45-4, PageID.456-57.)  According to Dr. Mitchell, the purpose of the visit was an annual exam, and Plaintiff "was very focused" on getting a gluten-free and soy-free diet.  (ECF No. 45-4, PageID.456.)  Dr. Mitchell requested verification of Plaintiff's professed allergies and, according to Dr. Mitchell, Plaintiff became argumentative. (ECF No. 45-4, PageID.456-57.)  Plaintiff asked, "what would happen if he stopped eating until he weighed 136 pounds so he could get more food."  (ECF No. 45-4, PageID.457.)  Dr. Mitchell informed him that refusing to eat would be conserved a possible suicidal ideation.  (*Id.*)

Dr. Mitchell avers that, before the deputies removed Plaintiff, she was able to perform a brief examination that revealed: clear lungs; regular heart rate and rhythm; nonrigid, nontender abdomen; bowel sounds in all four quadrants; extremities were without pre tibial edema; and a neuromuscular exam showed he was alert and oriented, cranial nerves 2-12 were intact, and that no gross neurologic deficits were appreciated. (ECF No. 45-4, PageID.457-58.)  Dr. Mitchell states that Plaintiff did not voice any complaints of "nausea, vomiting, constipation, diarrhea, fever, chills, cough, chest pain, or back pain."  (ECF No. 45-4, PageID.458.)  She further states that had Plaintiff voiced any such

complaints, she would have documented them. Dr. Mitchell further noted that Plaintiff weighed 153 pounds, with a BMI of 22, and that "a physical examination of his musculoskeletal system demonstrated normal extremities and spine." (*Id.*) According to Dr. Mitchell, Plaintiff did not bring up any other complaints besides his requested diet, and did not provide Dr. Mitchell with the name of any of his providers so that Dr. Mitchell could verify the alleged allergies. (*Id.*)

In Plaintiff's verified complaint,[4] he sets forth a six-page description of the encounter with Dr. Mitchell which, for the most part, does not disagree with the substance of the exchange. (ECF No. 38, PageID.271-76.) Plaintiff provides his version of the events in which he agrees that the bulk of their discussion revolved around his attempts at receiving a gluten and soy free diet, and Dr. Mitchell's refusal without medical support of his allergy. Plaintiff contends that he told her that "his requests are not a matter of 'likes' or preference, that her continued contemptuous remarks are malicious, inappropriate, and unprofessional, and that she was still completely failing to do anything about Plaintiff's clearly serious medical needs." (ECF No. 38, PageID.272-73.) Plaintiff recounts the

---

[4] The Court assumes, without discussion, that Plaintiff's amended complaint operates as a verified complaint for summary judgment purposes. Plaintiff's verification, placed after the form complaint but before the handwritten attachments, purports to verify "the foregoing," and arguably does not include the handwritten attachments. Nonetheless, as the issue is not determinative, the Court will assume for summary judgment purposes that the entire amended complaint is verified.

conversation deteriorating, with Dr. Mitchell being increasingly agitated, accused him of wasting her time, and that she began "retaliat[ing] against him in several ways," including "mak[ing] sure any future requests Plaintiff may have 'go nowhere' that that he 'doesn't get anything[,]'" (ECF No. 38, PageID.273-75),  and then claims that he told Dr. Mitchell "that of all the requests he had to make, including weight-loss accommodations, dietary issues accommodations, back complications accommodations, and persistently cold temperature accommodations, their exchange only allowed Plaintiff to discuss the weight issues and then his soy and gluten issues briefly and in passing, and both of which received absolutely no treatment and ended in retaliation."  (ECF No. 38, PageID.275.)

Although both parties set forth different accounts about the minutia of the July 25, 2022 visit, Plaintiff does not materially dispute that the encounter resulted in an argument and that he did not address any issues besides his dietary complaints.  While his verified complaint alleges that he wanted to address other issues, he did not actually raise the issues with Dr. Mitchell.  Moreover, and more fundamentally, even if he had raised the issues, there is no evidence in the record to suggest that he required medical attention for any of his alleged ailments.

As to Plaintiff's allegation that his cell was cold and he was deprived of a second blanket, he has not pointed to any evidence as to the degree of cold he was

subjected, during the summer months, in a cell with only one blanket. Courts have routinely held that "temporary inconveniences and discomforts" do not rise to the level of a constitutional violation. *Adams v. Pate,* 445 F.2d 105, 108-09 (7th Cir.1971). Without evidence of any physical injury, deprivations of blankets, bedding, or mattresses for a set period of time does not violate the Constitution. *See Wells v. Jefferson County Sheriff Dep't,* 35 Fed. App'x 142, 143 (6th Cir. 2002) (finding no Eighth Amendment violation where inmate slept on mattress on floor in cold cell for 6 days); *Jones v. Toombs,* No. 95–1395, 1996 WL 67750, at *1 (6th Cir. Feb.15, 1996) ("The defendants did not violate [plaintiff's] Eighth Amendment rights by depriving him of a mattress for a two-week period."); *Bean v. Monroe,* No. 2:04–CV–230, 2006 WL 625864, at *5 (W.D. Mich. Mar. 9, 2006) (holding no Eighth Amendment violation where plaintiff was in cold cell, with no mat, mattress, or blanket for three days). Moreover, Plaintiff has not shown that this is an arena of this or any other physician's responsibility.

Likewise, Plaintiff has not set forth any evidence indicating what medical attention his alleged back complications required. As stated above, in order to prove a deliberate indifference claim, Plaintiff must show: (1) that he had a sufficiently serious medical need; and, (2) that Dr. Mitchell "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine*, 60

36

F.4th at 317 (citing *Brawner*, 14 F.4th at 596 (internal citations omitted)).  To satisfy the second element of this test, Plaintiff need only prove "something akin to reckless disregard." *Grote*, 85 F.4th 397, 405 (6th Cir. 2023) (quoting *Brawner*, 14 F. 4th at 596).  Here, Defendant has provided medical records and the affidavit of Dr. Mitchell indicating that on the date of the exam, "a physical examination of his musculoskeletal system demonstrated normal extremities and spine."  (ECF No. 45-4, PageID.458.)  Plaintiff has provided no evidence on which a jury could rely to find that his alleged back injuries constituted a sufficiently serious medical need, or that Dr. Mitchell acted with reckless disregard in failing to address the need.

Plaintiff admits that he did not discuss his car accident injuries in any detail with Dr. Mitchell and that, at most, she rushed him through an exam.  Even if such conduct constituted, at most, negligence, "[d]eliberate indifference . . . does not include negligence in diagnosing a medical condition." *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995).  While Plaintiff and Dr. Mitchell may have disagreed on whether further examination was warranted in light of Plaintiff's vitals, behavior, and refusal (justified or not) to assist in providing any medical records, differences of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do not give rise to a constitutional violation.  *Smith v. Sator*, 102 F. App'x 907, 909 (6th Cir. 2004).

Finally, Plaintiff is unable to sustain a claim for First Amendment

Retaliation against Dr. Mitchell.  A First Amendment retaliation claim requires Plaintiff to show that: (1) he engaged in activities protected by the Constitution or statute; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and, (3) the adverse action was taken at least in part because of the exercise of the protected conduct. *Thaddeus-X*, 175 F.3d at 394.  Plaintiff contends that his protected activity was asking for medical care, and that in response to that request, Defendant Mitchell threatened Plaintiff with "suicide watch" and told him that all future medical requests would be denied.  Plaintiff is, in essence, attempting to distort a doctor's rejection of a medically unsubstantiated ailment into the basis of a First Amendment claim.  As discussed above, there is no evidence in the record that Plaintiff is allergic to soy and gluten and yet, according to his own account of his appointment with Dr. Mitchell, he insisted, argued, and demanded accommodations with his nonexistent or unproven, medically unidentified condition.  Dr. Mitchell's affidavit sets forth the context in which she "threatened" suicide watch, which was only in responding to Plaintiff's question as to what would happen if he stopped eating, which indeed, if it went on for any length of time, would have led to an extended form of suicide.  Plaintiff has set forth no evidence on which a jury could find that the indisputably heated discussion with Dr. Mitchell could form the basis of all three prongs of a First Amendment claim,

and the Court should grant Defendants' motion on this claim as well.

### III.   <u>CONCLUSION</u>

The Court should **GRANT IN PART AND DENY IN PART** Defendants'

motion for summary judgment (ECF No. 45).  Specifically, the motion should be

**DENIED WITHOUT PREJUDICE** as to Defendant Wellpath, due to the

bankruptcy stay, and **GRANTED** as to all other Defendants.

### IV.   <u>OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc*.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Date: February 6, 2025

_____
Anthony P. Patti
United States Magistrate Judge